**SO ORDERED.**

**SIGNED this 09th day of April, 2007.**

```
_____
                LEIF M. CLARK
        UNITED STATES BANKRUPTCY JUDGE
```
_____

# United States Bankruptcy Court
**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE<br><br>SHELLY L. MERRITT<br><br>*DEBTORS* | BANKR. CASE NO.<br><br>05-58142-C<br><br>CHAPTER 7 |

### DECISION AND ORDER REGARDING REAFFIRMATION AGREEMENT

CAME ON for consideration the foregoing matter. The debtor filed for bankruptcy on October 14, 2005, prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. On November 18, 2005, the debtor executed a reaffirmation agreement on a motor vehicle financed with General Motors Acceptance Corporation.[1] If this agreement had been subject to BAPCPA, the agreement would facially represent an undue hardship, because the debtor's expenses outstrip the debtor's income by an amount well in excess of this car payment. However, as this is a pre-BAPCPA case, all that was needed for the reaffirmation agreement to be effective

---

[1] The vehicle was purchased in February 2005, and carried an APR of .64% on a three year note set to mature in June 2008.

was the counter-signature of the debtor's attorney confirming that the debtor had been advised of her rights and had chosen to enter into the agreement anyway. That countersignature was present on this agreement.

The court writes regarding this agreement for only one reason. It was filed on April 4, 2007. The clerk's docket shows that the agreement was electronically filed by GMAC. The agreement itself shows that GMAC's representative did not even *sign* the agreement until the day that it was filed with the court. What's more, the agreement signed by GMAC was a fax copy, sent to them by the debtor on April 3, 2007.[2] The debtor received her discharge January 26, 2006.

Reaffirmation agreements run counter to a statutory policy that favors discharge. For this reason, such agreements are accompanied by a raft of statutory protections designed to assure that such agreements are not entered into either lightly or improvidently. While the precise range of protections has been altered by BAPCPA, the basic policy has not.

One of those statutory protections requires such agreements to be made prior to the entry of the debtor's discharge. *See* 11 U.S.C. § 524(c)(1). The statute also requires such agreements to be filed with the court,[3] but is nonspecific regarding whether the date of discharge (or any date, for that

---

[2] It is unclear exactly what course of events lay behind these facially evident facts. Someone, however, seems to have realized that the reaffirmation agreement so dutifully signed by both the debtor and the debtor's lawyer seems somehow never to have made it into the court's files. In fact, someone seems to have realized that the agreement somehow never seems to have been actually signed by GMAC until April 2007, some eighteen months after the fact. Perhaps GMAC lost the agreement that it had signed (which would explain the recent execution date on the part of GMAC). Or perhaps GMAC never actually got around to signing it in the first place. Or perhaps the debtor (or her lawyer) forgot to send the agreement back to GMAC for signature. In all events, as it is the creditor who stands to benefit from the execution of such an agreement, it seems likely that it was GMAC that discovered that no agreement was in their files, and GMAC that discovered that there was no agreement on file with the court either. That would explain the fax from the debtor to GMAC, the GMAC execution of the document on April 4, 2007, and the GMAC electronic filing of the document on the same day. Regardless the way the statute allocates the statutory duty regarding filing, the economics of reaffirmation impose the practical duty on the creditor, who in this case rather obviously dropped the ball.

[3] Judge Posner, of the Seventh Circuit, explains that the filing requirement has the salutary purpose of assuring that such agreements are in fact voluntary and not coerced.

> Section 524(c) of the Bankruptcy Code provides that an agreement reaffirming a dischargeable debt "is enforceable only if ... such agreement has been filed with the court." 11 U.S.C. § 524(c)(3). The purpose is to help assure that the agreement is

matter) is the deadline for such filing. The bankruptcy rules also set no deadline for filing these agreements, merely stating (with regard to pre-BAPCPA cases) that the court *may* hold a discharge hearing no more than 30 days after entry of the discharge, and on not less than ten days' notice, and that "a motion by the debtor for approval of a reaffirmation agreement shall be filed before or at the hearing." *See* FED.R.BANKR.P. 4008. A motion of this sort would only have been needed under pre-BAPCPA law when the debtor's lawyer did not sign the reaffirmation agreement (or the debtor did not have a lawyer).

Prudence would indicate that such agreements be filed prior to discharge, given that the debtor has rescission rights that extend for 60 days after the date the agreement is filed with the court or the date of discharge, whichever is later. What is more, great mischief could be invited were such agreements routinely filed well after discharge. A creditor (or debtor) might be tempted to make such agreements long after discharge, in clear violation of the statute's requirements, but to *backdate* the agreements. We know that not filing agreements can lead to all kinds of trouble. *See In re Latanowich*, 207 B.R. 326, 337-38 (Bankr. D.Mass. 1997) (Kenner, J.) (condemning Sears' practice of not filing reaffirmation agreements).

Nonetheless, there is no formal rule *requiring* such agreements to be filed prior to discharge. In this particular case, then, the fact that the agreement was only filed at this late date is not, of itself, reason for ruling the reaffirmation agreement ineffective (though a different result would obtain had the agreement not borne the signature of debtor's counsel affirming the requisite disclosures had been made to the debtor). To the contrary, so long as it can be shown that the reaffirmation

---

> voluntary on the debtor's part rather than coerced and does not put such a crushing weight on his shoulders that it prevents him from making the "fresh start" that is one of the goals of bankruptcy law. *In re Turner*, 156 F.3d 713, 718 (7th Cir.1998); *In re Duke*, 79 F.3d 43 (7th Cir.1996); *see generally Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Renshaw*, 222 F.3d 82, 86 (2d Cir.2000).

*Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 912 (7th Cir. 2001).

agreement was *made* prior to discharge, there is no statutory requirement that the agreement also be *filed* prior to discharge in order to be effective. *See In re Graham*, 297 B.R. 695, 699 (Bankr. E.D.Tenn. 2003) ("§ 524(c) does not contain any provision requiring that a reaffirmation agreement be filed with the court prior to entry of discharge in order for it to be valid"); *see also In re Davis*, 273 B.R. 152, 153 (Bankr. S.D.Ohio 2001); *In re Whisenant*, 265 B.R. 164, 167 (Bankr.E.D.Ark.2001) ("Section 524 does not provide that the filing of the reaffirmation agreement must occur before the discharge is granted"); *Rigal v. Fleet Mortgage Corp. (In re Rigal)*, 254 B.R. 145, 146 n. 3 (Bankr. S.D.Tex. 2000); *but see In re Pettet*, 271 B.R. 855, 857 (Bankr. S.D.Ind. 2002) (construing § 524(c)(1) to require both execution and filing of reaffirmation agreement prior to the debtor's discharge); *In re Jones*, 261 B.R. 479, 484 (Bankr.N.D.Ala.2001); *In re Brinkman*, 123 B.R. 611, 612 (Bankr. N.D.Ind. 1991); *In re Gruber*, 22 B.R. 768, 770 (Bankr. N.D.Ohio 1982) ("Once the court has entered the order of discharge the § 524(c)(1) deadline for making such an agreement has passed").[4] The agreement here under consideration, then, is not rendered invalid by its extraordinarily tardy filing.[5]

There remains the question whether the agreement was *made* prior to discharge, however. The debtor seems to have executed the form of the agreement in a timely manner. A reaffirmation

---

[4] The rationale for *requiring* pre-discharge filing as a condition to enforceability is thin. Some courts point to section 521 which, in its pre-BAPCPA incarnation required the debtor to file a reaffirmation agreement within 45 days of the first meeting of creditors in order to fulfill the debtor's stated intentions with regard to certain personalty serving as collateral. That statute merely seeks to force the *debtor* to act promptly. It does not apply to the *creditor*. Some courts mistakenly cite to early bankruptcy court decisions requiring pre-discharge filing, forgetting that the first iteration of section 524(c) passed by Congress required *all* debtors executing reaffirmation agreements to personally appear in court on the date set for their receipt of a discharge, as a condition to the agreement's validity, regardless whether represented by counsel or not. That procedure would certainly necessitate the agreement's being on file prior to discharge, else there would be no way to know whether a setting were needed. With the adoption of the alternative procedure in section 524(c)(3), permitting the warnings and notices to be given the debtor by counsel, debtors who were represented (and whose lawyers signed the agreements) would no longer have to appear, negating the necessity of a pre-discharge filing. For these reasons, this court respectfully declines to follow the line of precedent represented by *Pettet*.

[5] Hopefully, the creditor appreciates that the clerk of court did not require the creditor to first file a motion to re-open the case as a predicate to filing this reaffirmation agreement. The clerk would have been well within his rights to do so.

agreement is, however, a contract, made between at least *two* parties, only one of which is the debtor. The face of this agreement shows that the creditor, GMAC, did not execute this agreement until April 4, 2007, long *after* the entry of discharge. The question presented by these facts is thus straightforward: when was the agreement between the debtor and GMAC actually *made*? Put another way, was there an agreement between the parties prior to discharge, when only the debtor's signature appeared on the reaffirmation agreement form?

This court, in an unpublished decision, recently ruled that a reaffirmation agreement was not made until both the debtor *and* the creditor had signed the agreement. *See In re Garay*, Slip Op. 2006 WL 3469579 (Bankr. W.D.Tex. 2006). There, the court treated the debtor's signature on the document as the offer, and the creditor's signature as the acceptance. Failing acceptance, said the court, there could be no contract. *Id.*, citing CORBIN, CONTRACTS (ONE VOL. ED.) §§ 55-56 (West 1952).

While *Garay* may have been correct on its facts, it states too broad a conclusion of law. Offer and acceptance are but another way to express the truism that contract formation occurs when all parties to the contract have objectively expressed their intention to make the bargain expressed by the contract. *Fuqua v. Fuqua*, 750 S.W.2d 238, 245 (Tex.App.– Dallas 1988, writ denied). In order to determine whether there has been a meeting of the minds (and thus offer and acceptance), a court looks at the objective evidence – what the parties said and did – and not at the parties' subjective state of mind. *See Adams v. H & H Meat Prods., Inc*., 41 S.W.3d 762, 771 (Tex.App.– Corpus Christi 2001, no writ.); *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex.App.– Houston [14th Dist.] 2000, no writ). To find mutual assent, a court looks at the communications between the parties and the acts and circumstances surrounding those communications. *Komet v. Graves*, 40 S.W.3d 596, 601 (Tex.App.-San Antonio 2001, no writ).

The facts[6] here appear as follows: the debtor stated her intention to reaffirm this debt with GMAC in her schedules filed with her petition. The form signed by the debtor appears to have been furnished by GMAC – it is not a "standard" form of the sort normally used by debtors' counsel in this division, it contains highly detailed financial information regarding the loan most likely to have come from the creditor, and it contains a block offering the debtor the opportunity to ratify the validity of the creditor's lien (the sort of thing a creditor is likely to want, and a debtor is unlikely to unilaterally offer). What is more, all of the debtor information in the form, including the explanation for why the agreement does not represent an undue hardship, is handwritten by the debtor. These factors, taken together, support the conclusion that GMAC prepared the reaffirmation and sent it to the debtor for completion, following up on the debtor's stated intention.

It is not possible to know for sure why this agreement was not then promptly signed by GMAC and returned for filing with the court. It is also not particularly relevant. The fact that the debtor promptly signed an agreement to waive her discharge as to GMAC, using a form furnished to her by GMAC, constitutes objective evidence of the assent on the part of both the debtor and GMAC that the reaffirmation agreement as written constituted the agreement of the parties. A few additional factors only strengthen this conclusion. The creditor did not agree to change any of the terms of the original agreement, and so "offered" nothing in exchange for the debtor's "agreement" to reaffirm, save its understandable willingness to have the debtor make such an agreement. With no change in the contract's terms, it is less important that the creditor sign, because the creditor has nothing to which it needs to "assent" – it's not giving up anything.

---

[6] That is, the facts as they appear on the face of the agreement. The court could have requested all parties come before the court for testimony, but the margins simply are too thin to justify such a hearing. GMAC's representative would have to appear from Detroit. The debtor would also have to give up valuable work time (she is a lawyer) to appear as a witness. If the document itself affords the court sufficient information to arrive at the determination whether an agreement was made as of the date the debtor signed the agreement, as an objective matter, then further testimony should not be needed.

What is more, an agreement that is in the nature of a waiver does not normally require the assent of the party in whose favor waiver is given, because waiver is simply the intentional relinquishment of a known right by the party against whom waiver is asserted. *See 4901 Main, Inc. v. TAS Auto., Inc.*, 187 S.W.3d 627, 632 (Tex.App.– Houston [14th Dist.] 2006, no writ). As the form in this case correctly states, this reaffirmation agreement "gives up the protection of [the] bankruptcy discharge for this debt." That, at bottom, is simple waiver.

Reaffirmation agreements, of course, *could* consist of more than simply this waiver. The debtor and creditor might decide, as a condition to reaffirmation, to alter the terms of the underlying contract, to waive a pre-petition default, to extend the term, or the like. Such changes would of course require the creditor's assent, and a court would be justified in normally expecting the form of that assent to be expressed with a written signature.[7] This agreement, however, presents no such conundrum. It is a straightforward waiver of discharge with respect to this creditor. The court concludes that the facts as apparent on the face of the reaffirmation agreement itself, coupled with the schedules and statement of affairs in this case (of which the court takes judicial notice), confirm that this agreement was made in November 2005, when the debtor signed the form furnished to her by GMAC. It thus satisfies the requirements of section 524(c)(1).

It bears repeating here that the debtor's rescission rights commenced on April 4, 2007, the date when the agreement was ultimately filed with the court. *See* 11 U.S.C. § 524(c)(4).

One final point needs to be made here. This is a pre-BAPCPA case. The rules for when a reaffirmation agreement must be filed have may have changed since BAPCPA. Section 524(c) was amended in only one particular – subdivision (2) now requires that the debtor have received the disclosures specified in section 524(k) at or before the debtor signs the agreement. The agreement

---

[7] Though not necessarily. Again, if the form clearly originates with the creditor, including the alteration of the terms of the underlying contract, then signature becomes less important.

must still otherwise be made prior to discharge, and there is still no deadline for filing the agreement in section 524(c)(3).

However, section 524(m)(1) creates a significant problem unless the agreement is filed prior to discharge. That section states that a reaffirmation agreement is presumed to be an undue hardship for the debtor until 60 days after the agreement is *filed*. That same section also states that, if the presumption is not rebutted to the satisfaction of the court, the court may disapprove the agreement. However, the court cannot disapprove the agreement without notice and an opportunity for hearing to the affected creditor, and the hearing must be concluded *before the entry of the debtor's discharge*. *See* 11 U.S.C. § 524(m)(1).

Consider how this section might play out were the case *sub judice* to have been filed post-BAPCPA. Suppose, for discussion's sake, the court were to have reviewed the agreement and found it to have constituted an undue hardship.[8] The court would have been powerless to rule on the issue, because, by the simple *fiat* of filing the agreement after the discharge, the creditor avoids having the judge not approve the agreement. Congress surely could not have intended such an egregious "gotcha," given the detailed attention it gave to the issue of undue hardship in both subsections (k) and (m) of section 524. Nonetheless, the statute as currently written invites just that sort of gamesmanship.[9] Congress is invited to take a closer look at how section 524(m)(1) is drafted, and to redraft it in a way that more predictably yields the salutary results Congress no doubt sought to achieve.

# # #

---

[8] And the facts of this case would support such a presumption, because the debtor's expenses, according to her Schedule J, far exceeded her income, according to her Schedule I – by an amount well in excess of the amount of this car payment.

[9] Were the court to discover an *intentional* filing pattern indicating an attempt to play this sort of game, the court would treat such filing tactics (if proven) as violative of Rule 9011, with all the attendant consequences.